**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Kelly Campbell Cornelius, *on behalf of herself and all others similarly situated*, | ) ) ) | Case No. 1:19-mc-541 |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| Wells Fargo Bank, N.A., | ) ) | |
| Defendant. | ) ) | |

Plaintiff Kelly Campbell Cornelius, individually and on behalf of all other persons similarly situated, through her undersigned attorney, alleges as follows:

## NATURE OF THE ACTION

1.      This is a consumer protection and breach of contract action seeking redress for Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") unfair and deceptive practice of restraining out-of-state bank accounts to enforce default judgments arising from fraudulent leases assigned to Wells Fargo.

2.      Plaintiff and others similarly situated are some of the thousands of victims of Northern Leasing Systems, Inc. or its subsidiaries or affiliates, including but not limited to Lease Finance Group LLC, MBF Leasing LLC, Lease Source-LSI, LLC, Golden Eagle Leasing LLC, and Pushpin Holdings LLC (collectively, "Northern Leasing").  Northern Leasing traps small businesses into non-cancellable lease agreements for over-priced credit card processing equipment, and then abuses judicial process by obtaining default judgments based on these leases in the Civil Court of the City of New York.  Since 2010, Northern Leasing and its related entities have filed over 30,000 actions in New York City Civil Court and obtained over 19,000 default judgments.  Over 95 percent of the small business owners sued by Northern Leasing do not reside

1

in the State of New York.  Most of those small business owners could not afford to physically appear in New York or to hire an attorney to represent them, and, indeed, most first learned that a judgment had been obtained against them when Northern Leasing garnished their bank accounts.

3.      Northern Leasing is a notorious fraud and public authorities are in the process of shutting it down.  The Attorney General of New York and the Deputy Chief Administrative Judge of the Civil Court for the City of New York have filed a joint action to void Northern Leasing's contracts, to vacate Northern Leasing's default judgments, to force Northern Leasing to disgorge its fraudulently obtained money, and to dissolve Northern Leasing.  *See* Re-Notice of Petition, *People of the State of New York, et al., v. Northern Leasing Systems, Inc., et al.*, Index No. 450460/2016 (N.Y. Sup. Ct. Nov. 30, 2018).

4.      Wells Fargo conspired with Northern Leasing against Plaintiff and other similarly situated account holders to illegally restrain funds in their deposit accounts located in jurisdictions other than the jurisdiction from which the restraining notice or equivalent process issued (the "Restraining Jurisdiction").  Wells Fargo restrained funds deposited in Plaintiff's South Carolina savings account based on a New York restraining notice, on information and belief served in New York, and funds in similarly situated account holders' accounts located in jurisdictions other than the Restraining Jurisdiction, despite knowing such acts to be contrary to law.

5.      Wells Fargo did so because it has a financial interest to do so.  Northern Leasing's leases are financing leases under which the lessor's role is to provide funds.  *E.g.*, Lease Agreement for Ingenico iCT220 pin pad, dated Apr. 29, 2014 (**Exhibit A**); Lease Agreement for Dejavoo Z8 wireless pin pad & VeriFone P1000 power cord, dated Nov. 3, 2015 (**Exhibit B**).  Northern Leasing assigned its fraudulent financing leases to Wells Fargo as security for a loan.  The assignment gives Wells Fargo "all right, title and interest of lessor in and to this lease, all present and future rental,

lease and other payments and charges owed to lessor and all products and proceeds thereof."  *Id.*
Wells Fargo provided the funds Northern Leasing in turn extended to its lessees.  Enforcement of
the leases enables Northern Leasing to repay Wells Fargo with interest.  In other words, Northern
Leasing is an intermediary or "front" for Wells Fargo, through which Wells Fargo made usurious
loans to Plaintiff and similarly situated persons.

6.      Wells Fargo knew that domestication of the default judgments enforcing the leases
assigned to it would provide notice of the judgments to its depositors, who could then have the
fraudulently obtained judgments set aside.  Thus, Wells Fargo deceptively told Plaintiff and others
similarly situated that it was merely acting as a garnishee, when in truth it knew it was acting
unlawfully to enforce its own pecuniary interest in deceptively obtained default judgments.  Wells
Fargo's conduct violates statutes intended to protect against unfair, deceptive, fraudulent, or
unconscionable trade and business practices.  Wells Fargo's conduct also breached its contracts
with its depositors.

7.      Plaintiff brings this proposed class action on behalf of herself and all other persons
who, from the applicable limitations period to the present (the "Class Period"), had funds in their
Wells Fargo deposit accounts restrained based on process from a Restraining Jurisdiction other
than the jurisdiction in which the account was located.

## PARTIES

8.      Plaintiff Kelly Campbell Cornelius is a citizen of South Carolina.  She owns and
operates a small restaurant named Tios Mexican Cantina in Columbia, South Carolina.

9.      Defendant Wells Fargo Bank, N.A. is a Delaware corporation with its main office
in South Dakota.  Wells Fargo has bank branches in the District of Columbia and in every state

except Hawaii, Indiana, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Missouri, New Hampshire, Ohio, Oklahoma, Vermont, and West Virginia.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this matter under 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the Class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

11.     Alternatively, the Court has jurisdiction over all claims alleged herein under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and is between citizens of different states.

12.     Wells Fargo, through its privy, co-conspirator, and agent Northern Leasing, prosecuted court proceedings against Plaintiff and others similarly situated in the Civil Court of the City of New York, obtained judgments against them, sought court process to enforce those judgments, and seized funds from them pursuant to such process.  Thus, Wells Fargo has chosen to have the matters herein complained of decided in a judicial forum and has waived any right to assert the arbitration agreement in the Wells Fargo "Deposit Account Agreement" (**Exhibit C** at 4–8).

13.     The Court has personal jurisdiction over Defendant because the claims asserted in this action arise from Defendant's contacts with New York.

14.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the most substantial part of the events giving rise to the claims in this action occurred in this judicial district.

## **FACTUAL ALLEGATIONS**

15.     Northern Leasing, based in New York City, is a fraud to trap small business owners across the country into lease agreements having unconscionable terms for over-priced credit card processing equipment.  *See* Information about the Lawsuit Filed Against Northern Leasing Systems, Inc., Bureau of Consumer Frauds & Protection Resource Center, N.Y. Att'y Gen. Office, http://ag.ny.gov/NLFAQ.  Northern Leasing and their attorneys sued to collect on these leases in the Civil Court of the City of New York, regardless of where the individual sued resides or where the transaction occurred.  Because most individuals sued lived in states other than New York, Northern Leasing was able to obtain over 19,000 default judgments.

16.     The New York Attorney General's Office has a pending enforcement action against Northern Leasing that seeks to dissolve Northern Leasing, a permanent injunction prohibiting Northern Leasing's fraudulent activities, to declare void and order the recession of Northern Leasing's equipment leases, to obtain full restitution for Northern Leasing's victims, to disgorge Northern Leasing's profits, and to vacate all default judgments obtained by Northern Leasing.  *See Northern Leasing Systems*, Index No. 450460/2016.  Northern Leasing is also the subject of numerous other lawsuits, including RICO actions in New York (*Aghaeepour et al. v. Northern Leasing Systems, Inc. et al.*, 7:14-cv-5449 (S.D.N.Y.)) and California (*Rainbow Business Services, et al v. Sam Buono, et al.*, 4:10-cv-01993 (N.D. Cal.)).

17.     Plaintiff, and others similarly situated, are victims of Northern Leasing's fraud.

     a.      On April 29, 2014, Plaintiff leased an Ingenico iCT220 pin pad, worth approximately $150, for $6,342, to be paid in 48 monthly installments of $129 plus a $150 restocking fee at the end of the lease.  Ex. A.

     b.      On October 29, 2015, Plaintiff leased a Dejavoo Z8 wireless pin pad, worth approximately $210, and a VeriFone P1000 power cord, worth approximately $20, for $17,430, to be paid in 48 monthly installments of $360 plus a $150 restocking fee at the end of the lease.  Ex. B.

18.     The leases state they are finance leases under Article 2A of the Uniform Commercial Code and expressly disclaim any implied warranty that the equipment would be function or be useable.  Exs. A & B.   A finance lease is the functional equivalent of an extension of credit, and the lessor's only responsibility is to provide funds.  Finance leases are amortized like a loan, with interest calculated and expensed.  For example, Exhibit B is a lease under which Northern Leasing loaned Plaintiff $230 at an interest rate exceeding 1875%.

19.     Northern Leasing's leases with other Class members likewise charged outrageous, usurious amounts of interest—always exceeding 25%—on small loans.

20.     Based on the leases exhibited with this Complaint, on April 3, 2019, Northern Leasing obtained a default judgment against Plaintiff in the Civil Court of New York City.  *See* Notice of Entry, *Northern Leasing Systems, Inc. v. Kelly C. Cornelius*, et al., Index No. 024741/18 (N.Y. Civ. Ct. Apr. 10, 2019) (**Exhibit D**).

21.     As noted above, Northern Leasing has likewise obtained default judgments against thousands of similarly situated persons.

22.     Both leases state in their top margins that Northern Leasing has "assigned to Wells Fargo . . . all right, title and interest of lessor in . . . all present and future rental, lease and other payments and charges owed to lessor hereunder . . . pursuant to the loan and security agreement, dated October 30, 2013 . . . between Wells Fargo and Lessor."  Exs. A & B.  Wells Fargo agreed to accept assignment of Northern Leasing's leases as security for a loan to Northern Leasing.

23.     On information and belief, all leases executed after October 30, 2013 are assigned to Wells Fargo.

24.     Wells Fargo had a financial interest in the enforcement of Northern Leasing's leases because Wells Fargo held all lessor's rights under those leases.  Wells Fargo and Northern Leasing

were in privity regarding the leases, and when Northern Leasing acted to enforce the leases, it acted as Wells Fargo's agent for the enforcement of lessor rights held exclusively by Wells Fargo.

25.     Wells Fargo was also a coconspirator with Northern Leasing, because it (1) agreed to assist Northern Leasing with its fraudulent scheme, (2) took overt action to assist Northern Leasing in the conduct of the fraud, (3) which was intended to further the fraud and (4) which resulted injury to Plaintiff and similarly situated persons.

26.     On or about May 20, 2019, Wells Fargo's agent and coconspirator Northern Leasing served Wells Fargo with a subpoena and restraining notice pursuant to N.Y.C.P.L.R. § 522(b) (**Exhibit E**).  Where the notice was served is unclear.  The address for Wells Fargo Bank, N.A. is blank on the notice.  On information and belief, the subpoena and notice were served on Defendant in New York.  In litigation in South Carolina, Plaintiff alleged service occurred in New York and Defendant did not traverse the allegation.  *See* Motion to Set Aside Entry of Default, *Campbell v. Wells Fargo Bank, N.A.*, 2019-CP-40-04480 (S.C. Ct. Com. Pl. (Richland Cty.)).

27.     In response to the restraining notice, Wells Fargo restrained $19,483.00 in funds on deposit in Plaintiff's South Carolina savings account, identified on Wells Fargo's subpoena return.

28.     There was no legal basis for Wells Fargo's actions.  The restrained account is held in South Carolina.  Under New York law, a judgment creditor's service of a restraining notice on a garnishee bank's New York branch is ineffective under the "separate entity rule" to freeze assets held in the bank's out-of-state branches.  A judgment creditor must serve a restraint on the branch in which the account is kept, because, for enforcement purposes, a bank account is deemed property of the judgment debtor only at that branch.  A New York court does not have jurisdiction to seize property located in South Carolina, including bank accounts at South Carolina branches of national banks.

29.     On information and belief, Wells Fargo took substantially similar actions regarding other judgment debtors of Northern Leasing who held accounts with Wells Fargo located in jurisdictions other than the Restraining Jurisdiction.

30.     To enforce a New York judgment by seizing assets in South Carolina, Northern Leasing had to domesticate the judgment according to South Carolina law.  South Carolina, like most states, has adopted the Uniform Enforcement of Foreign Judgments Act.  S.C. Code § 15-35-900 *et seq.*  That uniform act provides judgment debtors with important legal protections.  For example, had Northern Leasing attempted to domesticate its fraudulently obtained default judgment in Plaintiff's home state, she would have received notice and opportunity to bring Northern Leasing's fraud to the attention of a court possessing jurisdiction.  *See* S.C. Code § 15-35-940 (setting forth the procedure for moving for relief from a foreign judgment).  As a further protection, some states—including New York—do not grant automatic recognition to foreign default judgments and instead require the judgment creditor to demonstrate that proper service occurred, and that recognition of the judgment would not be contrary to domestic public policy.

31.     Wells Fargo denied Plaintiff and similarly situated persons those rights and protections when it unlawfully decided to enforce undomesticated foreign default judgments. Wells Fargo knew the restraining notice regarding Plaintiff's account was invalid and that its conduct in enforcing it was unlawful.  Wells Fargo nonetheless knowingly and intentionally violated the rights of Plaintiff and others similarly situated because doing so served Wells Fargo's pecuniary interest in the success of the fraud perpetuated by its coconspirator, Northern Leasing.

32.     On August 13, 2019, Plaintiff filed an action against Wells Fargo in the South Carolina Court of Common Pleas for Richland County, asserting causes of action for money had and received and civil conspiracy (a stand-alone cause of action in South Carolina).  Plaintiff also

sought a preliminary injunction.  Wells Fargo did not appear to defend that action.  Instead, Wells Fargo intentionally defaulted to avoid the potentially preclusive effect of adverse rulings on contested issues.

33.    On September 30, 2019, the court of common pleas granted preliminary relief to Plaintiff, ordering Wells Fargo to release Plaintiff's restrained funds.  That order was served on Wells Fargo on October 3, 2019, but Wells Fargo ignored it, so on October 17, 2019, Plaintiff moved for an order requiring Wells Fargo's senior executive in central South Carolina to appear personally to show cause why Wells Fargo should not be held in contempt.  The next day, attorneys for Wells Fargo suddenly appeared and filed a "notice of compliance" stating that Wells Fargo had cut a cashier's check payable to Plaintiff that day, which would shortly be delivered to Plaintiff.  Plaintiff subsequently dismissed that action in favor of the instant action on behalf of herself and all others similarly situated.

34.    Plaintiff and others similarly situated were injured by Wells Fargo's wrongful conduct as detailed above.  The right of Plaintiff and others similarly situated to access and use the funds in their respective bank accounts is a valuable property right.  Wells Fargo, by freezing their accounts in violation of the laws of the State of New York and the laws of the states in which their accounts are or were located, damaged Plaintiff and others similarly situated by depriving them of their property.

## CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States (1) who are or were judgment debtors of Northern Leasing Systems, Inc., or any of its subsidiaries or affiliates, (2) who hold or held deposit accounts with Wells Fargo Bank, N.A., or any of its subsidiaries, branches, or affiliates, and (3) who had funds in their Wells Fargo accounts

restrained pursuant to process for the enforcement of judgments in favor of Northern Leasing issuing from jurisdictions other than the jurisdiction in which their Wells Fargo accounts were located during the Class Period.

Excluded from the Class are current and former officers and directors of Wells Fargo or Northern Leasing; members of the immediate families of the officers and directors of Wells Fargo or Northern Leasing; Wells Fargo's or Northern Leasing's legal representatives, heirs, successors, assigns, any entity in which either of them has or has had a controlling interest; any federal, state, or local governmental agencies; any judges who have decided or are assigned to decide some or all issues in this case; any persons related to a judge in a manner that would disqualify the judge from hearing the case; and any chambers staff working for the assigned judge or other courthouse staff who perform tasks relating to this matter.

36.     Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

37.     This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure.  While the exact number and identities of other Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are thousands of Class members.  Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

38.     Common questions of law and fact arise from Defendant's conduct described herein.  Such questions are common to all Class members and predominate over any questions affecting individual Class members.  These include:

a.  Whether Northern Leasing's rights under leases with Class members were assigned to Wells Fargo;

b.  Whether Northern Leasing's actions to enforce lessor rights assigned to Wells Fargo are imputable to Wells Fargo;

c.  Whether the restraining notices served by Northern Leasing regarding Class members' Wells Fargo accounts were valid, and, if not, whether Wells Fargo knew them to be invalid;

d.  Whether Wells Fargo, or any of its officers, managers, or employees, realized any material benefit from the enforcement of Northern Leasing's restraining notices;

e.  Whether any persons employed by or on behalf of Wells Fargo acted in concert with any persons employed by or on behalf of Northern Leasing.

f.  Whether Wells Fargo was a knowing participant in Northern Leasing's fraud;

g.  Whether Wells Fargo intentionally acted to thwart judgment debtors' rights under the Uniform Enforcement of Foreign Judgments Act or similar legislation as enacted by the respective states;

h.  Whether, and to what extent, injunctive relief should be imposed on Wells Fargo to prevent such conduct in the future;

i.  Whether the members of the Class have sustained damages as a result of Wells Fargo's wrongful conduct;

j.  The appropriate measure of damages or other relief; and

k.  Whether Wells Fargo should be enjoined from continuing its unlawful practices.

39.  Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein.  Plaintiff and Class members sustained similar injuries arising out of Wells Fargo's wrongful conduct.  Wells Fargo's unlawful, unfair, and deceptive actions concern the same business practices described herein irrespective of where they occurred.  The injuries of the Class members were caused directly by Wells Fargo's unfair and deceptive practices.  In addition, the factual underpinning of Wells Fargo's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

40.  Plaintiff will fairly and adequately represent and pursue the interests of the Class. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will

vigorously represent the interests of the Class members.  Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

41.     Plaintiff has retained competent and experienced class action attorneys to represent her interests and those of the Class members.  Plaintiff and Plaintiff's counsel have the necessary financial resources to litigate this class action adequately and vigorously.  Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum.  Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein.

43.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Wells Fargo has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

44.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

45.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings or incompatible standards of conduct for Wells Fargo.

Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

46.     Wells Fargo's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, Wells Fargo's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT 1
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

47.     Plaintiff re-alleges and incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

48.     Plaintiff brings these claims on behalf of herself and the other members of the Class for an injunction and damages for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

49.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

50.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

51.     When Wells Fargo seized Plaintiff and Class members' funds without notice, it deceptively told Plaintiff and Class members that it was merely acting as a garnishee.  In truth, Wells Fargo was acting to enforce restraining notices it knew to be invalid to further its own pecuniary interest in fraudulently obtained default judgments at the expense of its account holders. Wells Fargo's conduct violates the above-referenced statutes, which are intended to protect consumers against unfair, deceptive, fraudulent, or unconscionable trade and business practices.

52.     Under the circumstances, Wells Fargo's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

53.     Wells Fargo's actions impact the public interest because Plaintiff was injured in the same way as thousands of other Wells Fargo account holders who were victimized by Northern Leasing's fraud.

54.     The foregoing deceptive acts and practices are directed at consumers.

55.     The foregoing deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages including, *inter alia*, the loss of funds deposited with Wells Fargo.

56.     Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, an injunction enjoining Wells Fargo's conduct, and any other relief the Court deems appropriate.

**COUNT II**
**BREACH OF CONTRACT**

57.     Plaintiff re-alleges and incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

58.     Plaintiff brings these claims on behalf of herself and the other members of the Class for and damages for breach of contract under the law of contract of New York and other states.

59.     The Wells Fargo Deposit Account Agreement (Ex. C) is a binding contract entered into by Plaintiff and each respective Class member, on the one hand, and Wells Fargo, on the other hand.

60.     The terms of the contract between Plaintiff and Wells Fargo are identical to the terms of the contracts between each Class member and Wells Fargo.

61.     Wells Fargo breached the Deposit Account Agreement when it acted on legal process it knew to be invalid to restrain funds in Plaintiff and Class members' respective accounts, for the purpose of advancing Wells Fargo's own pecuniary interests at the expense of Plaintiff and Class members.  In doing so, Wells Fargo failed to exercise ordinary care as expressly required under the Deposit Account Agreement.

62.     Wells Fargo's breach of the Deposit Account Agreement proximately caused Plaintiff and Class members to suffer actual damages including, *inter alia*, the loss of funds deposited with Wells Fargo.

63.     Plaintiff and Class members are entitled to recover compensatory damages, attorneys' fees and costs, and any other relief the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant and prays for relief as follows:

a.     An order that this action be maintained as a class action and appointing Plaintiff as representative of the Class and appointing the undersigned attorney as Class Counsel in this action;

b.      Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

c.      All recoverable compensatory and other damages sustained by Plaintiff and Class members;

d.      Actual and statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

e.      A decree requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint;

f.      Statutory pre-judgment and post-judgment interest on any amounts;

g.      Payment of reasonable attorneys' fees and costs; and

h.      Such other relief as the Court may deem just and proper

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b)(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury on all questions of fact raised by this Complaint.

[signature page follows]

Respectfully submitted by:

s/Richard A. Harpootlian
Richard A. Harpootlian
Christopher P. Kenney (*pro hac vice forthcoming*)
Phillip D. Barber (*pro hac vice forthcoming*)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
rah@harpootlianlaw.com
cpk@harpootlianlaw.com
pdb@harpootlianlaw.com

ATTORNEYS FOR PLAINTIFF KELLY
CAMPBELL CORNELIUS, ON BEHALF
OF HERSELF AND ALL OTHERS
SIMILARLY SITUATED

November 21, 2019
Columbia, South Carolina.